UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ANNE KING,<br><br>    Plaintiff,<br><br>v.<br><br>COREY KING and TREY BURGAMY, in their individual and official capacities, and WASHINGTON COUNTY,<br><br>    Defendants. | Civil Action No. _____ |

# COMPLAINT

"[F]reedom of thought and speech 'is the matrix, the indispensable condition, of nearly every other form of freedom.'"—*Fed. Elec. Comm'n v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 264 (1986) (quoting *Palko v. Connecticut*, 302 U.S. 319, 327 (1937) (Cardozo, J.)).

## INTRODUCTION

1.  Thirty-three years after Georgia's highest court held criminal defamation unconstitutional, Anne King lamented on Facebook about her ex-husband Officer Corey King's refusal to bring their sick child medicine. Officer King and his buddy, Investigator Trey Burgamy, had Ms. King arrested and jailed for criminal defamation.

2. This sort of constitutional violation is customary in Washington County—especially when it comes to online speech. Threats of criminal-defamation prosecutions even appear on Facebook. Ms. King sues Officer King, Investigator Burgamy, and Washington County under 42 U.S.C. § 1983 to recover for the deprivation of her civil rights.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff Anne King is an adult citizen of the United States. By filing this Complaint, she avails herself of this Court's jurisdiction and venue.

4. Defendant Corey King is an officer employed by the Washington County Sheriff's Office. His actions here were willful, malicious, and corrupt; he intended to injure Ms. King. At all relevant times, he was acting as a county official, not an arm of the state. He was working for the Sheriff, a "county officer[]" under the Georgia Constitution, who is elected, paid, and equipped by the County. He may be served with process at 1735 Kaolin Road, Sandersville, Georgia 31082, or wherever else he may be found and served by law.

5. Defendant Trey Burgamy is an investigator employed by the Washington County Sheriff's Office. His actions here were willful, malicious, and corrupt; he intended to injure Ms. King. At all relevant times,

he was acting as a county official, not an arm of the state. He was working for the Sheriff, a "county officer[]" under the Georgia Constitution, who is elected, paid, and equipped by the County. He may be served with process at 1722 Valley Road, Apartment A, Milledgeville, Georgia 31061, or wherever else he may be found and served by law.

6. Defendant Washington County (the "County") is a political subdivision of the State of Georgia that can sue and be sued. The Board of Commissioners is the County's governing authority, and the Sheriff's Office is its law enforcement authority. The County may be served with process through the Board's chairman, Horace Daniel, at 119 Jones Street, Sandersville, Georgia 31082, or wherever else he may be found and served by law.

7. This Court has subject-matter jurisdiction under 28 U.S.C §§ 1331 and 1343(a)(3)–(4) because this case arises under 42 U.S.C. § 1983 and the First and Fourth Amendments to the United States Constitution. At all relevant times, Officer King and Investigator Burgamy acted under color of the statutes, ordinances, regulations, customs, and usages of the County and of the State of Georgia. The Court has supplemental jurisdiction over Ms. King's state-law claims under 28 U.S.C. § 1367.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred in Washington County, Georgia, which is within the Middle District of Georgia. Venue is proper in this Division under Local Rule 3.4 because Ms. King resides here, and her claims arose here.

## FACTUAL BACKGROUND

### The County customarily violates First Amendment rights; Officer King uses that custom to manipulate Ms. King.

9. The County customarily violates the First Amendment by arresting people for criminal defamation. For example, one woman was arrested and jailed for a Facebook post in which she called someone a "POS." Another woman threated to have a Facebook user prosecuted for criminal defamation, implying that criminal-defamation charges are customary in the County.

10. The County tacitly authorizes repeated constitutional violations or is deliberately indifferent to them. For instance, although criminal defamation has been unconstitutional in Georgia for decades, County law enforcement, on information and belief, regularly arrest and charge people with criminal defamation. The County magistrate even

signs the arrest warrants. And the County has done nothing to stop this well-known unconstitutional practice.

11. The County's lack of training also shows its tacit authorization of or deliberate indifference to constitutional violations. On information and belief, the County neither provides nor requires First Amendment training for sheriff's officers. On information and belief, the County neither provides nor requires training about respecting people's civil rights.

12. Officer King uses the County's unconstitutional custom to manipulate Ms. King. After the Kings divorced and Officer King remarried, for example, his new wife began harassing Ms. King. During one encounter, Ms. King said something about the new wife's weight. And within days the County magistrate had issued a warrant against Ms. King. Officer King seized the opportunity. He propositioned Ms. King: If she slept with him, he promised to get the case dismissed. She slept with him, and the case was dismissed.

> **Officer King conspires with Investigator Burgamy to have Ms. King arrested and jailed for criminal defamation.**

13. In January 2015, Ms. King was caring for her and Officer King's son and daughter. Everyone in her house was sick. The Kings'

eight-year-old son had it the worst; he had been to the emergency room. So Ms. King asked Officer King to pick up some medicine on his way to work. Although Ms. King's house is just three miles from the Sheriff's Office, he refused to do so, claiming he was too busy.

14.    The next morning, January 15, 2015, Ms. King vented on Facebook:



Anne Boyd King 😳 feeling overwhelmed
51 mins

That moment when everyone in your house has the flu and you ask your kid's dad to get them (not me) more Motrin and Tylenol and he refuses.

2 likes   4 comments

15.    Several people commented on the post, expressing their support. "POS," Susan Hines wrote. "Give me an hour and check your mailbox. I'll be GLAD to pick up the slack."

16.    Officer King wasn't as supportive. "Take that bullshit off Facebook," he wrote. But she didn't. And so later, he took a screen shot of the post and the comments, added something about how "righteous" he was, and posted it on Facebook.

17.    Officer King and Investigator Burgamy then cooked up a scheme to have Ms. King charged, arrested, and jailed. Officer King

— 6 —
COMPLAINT

started by filing an incident report with Investigator Burgamy, styling himself as the "Victim."

18. The next day, the County magistrate—who works regularly with Officer King—issued a notice, ordering Ms. King and Hines to appear for a warrant hearing.

19. On January 21, 2015, Ms. King and Hines appeared for the warrant hearing. When the hearing began, the magistrate already had printouts of the Facebook posts. Officer King testified first. He admitted that he had requested a warrant against Ms. King because of her "derogatory statements" on Facebook.

20. Officer King was the only witness for the prosecution.

21. At some point, the magistrate surmised that this case "was not actually about harassing phone calls," but "defamation of character." He ultimately determined that Ms. King had criminally defamed Officer King and instructed a deputy magistrate to sign a warrant charging Ms. King with "CRIMINAL DEFAMATION." Ex. C, Warrant.

22. Here is how the warrant describes the so-called offense:

> Said Offense being described as SUBJECT DID, WITHOUT A PRIVILEGE TO DO SO AND WITH INTENT TO DEFAME ANOTHER, COMMUNICATE FALSE MATTER WHICH TENDS TO EXPOSE ONE

WHO IS ALIVE TO HATRED, CONTEMPT, OR RIDICULE, AND WHICH TENDS TO PROVOKE A BREACH OF PEACE. SPECIFICALLY, SUBJECT DID MAKE DEROGATORY AND DEGRADING COMMENTS DIRECT AT AND ABOUT COREY KING, FOR THE PURPOSE OF PROVOKING A BREACH OF THE PEACE.

23. During the hearing, the magistrate even threatened to "ban [Ms. King] from Facebook."

24. Hines asked the magistrate about her First Amendment rights. "You can call Mr. King a piece of shit to his face," the magistrate said. "You can even tell someone else you think he is a piece of shit. But you can't post it out for the public to see. That's defamation of character."

25. Ms. King and Hines were arrested by sheriff's officers when the hearing ended.

26. Hines told Investigator Burgamy that she "didn't understand why all this was happening." He said, "because of Anne and your association with her." But he allowed Hines to drive herself to the County jail, sparing her some embarrassment.

27. Officer King and Investigator Burgamy wanted to make an example of Ms. King, however. She was thus escorted from the courtroom by a deputy and put in the back of a patrol car to be taken to jail. On the

— 8 —
COMPLAINT

way to jail, the deputy driving Ms. King told her that he couldn't believe what was happening.

> **The jailer cannot find a code for "criminal defamation" because it is not a crime—and hasn't been for decades.**

28. At the jail—where Officer King is Jail Commander—processing Ms. King and Hines proved difficult. The fingerprinting system requires a code for each detainee. But there was no code for "criminal defamation" (presumably because it was held unconstitutional decades ago). One jailer emailed the software vendor, asking about the code to no avail. Another called the vendor and spoke to a representative.

29. At any rate, Ms. King was locked in a cell for about four hours. Then she was bonded out for $1,000.

30. Later, Ms. King returned to court. This time, a state-court judge presided over the matter. He agreed that there was no basis for Ms. King's arrest, adding "I don't even know why we're here." The solicitor general attempted to address the court's concerns, claiming "just because something is legal does not make it right." In the end, the solicitor dropped the case but threatened other charges.

> **More trouble ahead: Officer King threatens willful contempt charges for future Facebook posts.**

31. Six months later, the Kings had an argument over their son. "[D]on't make the mistake of going to Facebook with your little shit you found to fuss about," Officer King wrote. Ms. King responded, "Make sure you have [the magistrate] on standby." "[I'd] rather not waste [his] time again," Officer King wrote, "[w]illful contempt is better."

32. Ms. King lives in fear, worrying that at any time she could be arrested and jailed if someone does not like something she says. She also experiences anxiety and distress, knowing that Officer King remains affiliated with County law enforcement, knowing that he could arrest her again for anything, or nothing at all.

## LEGAL LIABILITY

### Count I
### First Amendment Violation Under 42 U.S.C. § 1983
### (All Defendants)

33. Ms. King incorporates paragraphs 1–32 into this Count.

34. Georgia's criminal defamation statute was held unconstitutional over 30 years ago. *See Williamson v. State,* 249 Ga. 851 (1982). The County, Officer King, and Investigator Burgamy had fair warning of case

COMPLAINT

law clearly establishing this right to be free from prosecution for criminal defamation.

35.   In any event, under clearly established law, no state may punish protected speech. Ms. King's Facebook posts are protected speech.

36.   No reasonable officer could believe that Ms. King's Facebook post threatened imminent lawless action or the incitement of violence. In fact, Officer King has admitted that he sought the warrant because of the "derogatory" content of Ms. King's speech.

37.   By subscribing the warrant to arrest Ms. King, and in fact arresting her, among other things, Investigator Burgamy intentionally violated Ms. King's rights.

38.   By seeking an arrest warrant under a long-unconstitutional statute, pressing charges, and conspiring with Investigator Burgamy to prosecute a bogus charge against Ms. King, Officer King intentionally violated Ms. King's rights.

39.   Ms. King's constitutionally protected conduct was the substantial, motivating factor for the County, Officer King, Investigator Burgamy's action.

40.   The County is liable for the violation of Ms. King's rights because the need for more or different training here is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,

that the County can reasonably be said to have been deliberately indifferent to the need.

41. The County is liable under § 1983 because its inadequate training and supervision caused, or contributed to causing, Officer King and Investigator Burgamy to intentionally commit acts, acting under color of law, that violated Ms. King's First Amendment rights. *Connick v. Thompson*, 563 U.S. 51, 63-64 (2011); *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989).

42. Repeated violations of individuals' civil rights is the predictable consequence of the County's failure to train officers regarding the Constitutional limitations on punishing the common scenario of allegedly derogatory statements being posted on social media.

43. The County is also liable under § 1983 because Officer King and Investigator Burgamy's conduct is the product of the County's failure to train officers or remedy problems in the face of repeated incidents where the County's officers, agents or both, acting under color of law, intentionally deprived citizens of constitutional rights. This inaction on the County's part constitutes deliberate indifference to civil rights and rises to the level of a custom or policy.

44. As a direct and proximate result of Officer King, Investigator Burgamy, and the County's wrongful conduct, Ms. King suffered unlawful arrest, detention, anguish, embarrassment, humiliation, stress, and anxiety, and will continue to suffer damages.

## Count II
## Fourth Amendment Violation Under 42 U.S.C. § 1983
## (All Defendants)

45. Ms. King incorporates paragraphs 1–44 into this Count.

46. Ms. King has a Fourth Amendment right to be free of unreasonable seizures. U.S. Const. IV ("The right of the people to be secure in their persons, … papers, and effects against unreasonable searches and seizures, shall not be violated"). Officer King and Investigator Burgamy had fair warning of those rights, which were clearly established when they violated them.

47. By arresting Ms. King without even arguable probable cause—under the guise of a long-unconstitutional statute—Officer King and Investigator Burgamy are liable under § 1983 because they intentionally committed acts, acting under color of law, that violated Ms. King's Fourth and Fourteenth Amendment rights.

48. No reasonable officer could have believed that any action of Ms. King comprised an offense punishable within the bounds of the Constitution. Any reasonable officer would have known that, under clearly established law, there was no probable cause to arrest Ms. King.

49. Investigator Burgamy violated Ms. King's Fourth Amendment right to be free from unlawful seizure of the person by subscribing the arrest warrant and arresting Ms. King on January 21, 2015.

50. Officer King violated Ms. King's Fourth Amendment right to be free from unlawful seizure of the person by, among other things, giving statements on January 21, 2015, and before then, for the admitted purpose of obtaining from the Magistrate a warrant to arrest Ms. King for "derogatory" comments.

51. Arresting Ms. King was objectively unreasonable. Defendants knew or should have known that officers may not arrest a person for a non-threatening Facebook post describing disappointment.

52. Officer King and Investigator Burgamy violated Ms. King's First and Fourth Amendment rights, directly and proximately causing her to suffer unlawful arrest, detention, anguish, embarrassment, humiliation, stress, and anxiety.

53. The County is liable for the violation of Ms. King's rights because the need for more or different training here is so obvious, and the

inadequacy so likely to result in the violation of constitutional rights, that the County can reasonably be said to have been deliberately indifferent to the need.

54.  The County is liable under § 1983 because its inadequate training and supervision caused, or contributed to causing, Officer King and Investigator Burgamy to intentionally commit acts, acting under color of law, that violated Ms. King's Fourth Amendment rights. *Connick v. Thompson*, 563 U.S. 51, 63-64 (2011); *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989).

55.  The County is also liable under § 1983 because Officer King and Investigator Burgamy's conduct is the product of the County's failure to train officers or remedy problems in the face of repeated incidents where the County's officers, agents or both, acting under color of law, intentionally deprived citizens of constitutional rights. This inaction on the County's part constitutes deliberate indifference to civil rights and rises to the level of a custom or policy.

56.  As a direct and proximate result of Officer King, Investigator Burgamy, and the County's wrongful conduct, Ms. King suffered unlawful arrest, detention, anguish, embarrassment, humiliation, stress, and anxiety, and will continue to suffer damages.

## Count III
## Malicious Prosecution
## (Defendants King and Burgamy)

57. Ms. King incorporates paragraphs 1–56 into this Count.

58. Officer King and Investigator Burgamy unlawfully detained Ms. King, depriving her of her personal liberty by, among other things, having her arrested and jailed without probable cause.

59. As a direct and proximate result of Officer King and Investigator Burgamy's wrongful conduct, Ms. King has suffered and will continue to suffer damages.

## Count IV
## False Arrest
## (Defendants King and Burgamy)

60. Ms. King incorporates paragraphs 1–59 into this Count.

61. Officer King and Investigator Burgamy had Ms. King arrested under process of law and without probable cause. The arrest was done maliciously because, among other things, it was based on statute that was held unconstitutional decades ago.

62. As a direct and proximate result of Officer King and Investigator Burgamy's wrongful conduct, Ms. King has suffered and will continue to suffer damages.

## Count V
## Civil Conspiracy
## (Defendants King and Burgamy)

63. Ms. King incorporates paragraph 1–62 into this Count.

64. Officer King and Investigator Burgamy conspired to maliciously prosecute and falsely arrest Ms. King. They also conspired to violate her First and Fourth Amendment rights. That is, they conspired to obtain an unlawful object or to obtain a lawful object by unlawful means.

65. As a direct and proximate result of Officer King and Investigator Burgamy's wrongful conduct, Ms. King has suffered and will continue to suffer damages.

## PRAYER FOR RELIEF

Ms. King respectfully prays for relief as follows:

(a) That the Court award her compensatory damages on all counts where they are recoverable.

(b) That the Court award her punitive damages, including under O.C.G.A. § 51-12-5.1.

(c) That the Court award her attorney's fees, litigation expenses, and costs, including under 42 U.S.C. §§ 1920 and 1988 and O.C.G.A. § 13-6-11.

(d) That the Court award her any other relief necessary to do justice.

## JURY DEMAND

Ms. King demands a jury trial on all issues so triable.

Dated: January 19, 2017.        Respectfully submitted,

/s/ *Andre T. Tennille III*
Kenneth B. Hodges III
Georgia Bar No. 359155
Andre T. Tennille III
Georgia Bar No. 940510
KEN HODGES LAW
2719 Buford Highway, N.E.
Atlanta, Georgia 30324
(404) 692-0488
ken@kenhodgeslaw.com
dre@kenhodgeslaw.com

Cynthia L. Counts
Georgia Bar No. 190280
DUANE MORRIS LLP
1075 Peachtree Street NE, #1800
Atlanta, Georgia 30309
(404) 253-6910
clcounts@duanemorris.com

*Counsel for Plaintiff Anne King*