IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ANNE KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:17-CV-24 (MTT) |
| | ) |
| COREY KING, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER

Before the Court is the Defendants' partial motion to dismiss (Doc. 16). The Defendants argue (1) Washington County lacks control over sheriff's deputies and magistrates and thus cannot be held liable for their misconduct, (2) Defendants King and Burgamy are entitled to Eleventh Amendment immunity as to federal claims against them in their official capacities, and (3) Defendants King and Burgamy are entitled to sovereign immunity as to state law claims against them in their official capacities. As discussed below, the motion (Doc. 16) is **GRANTED**.

## I. BACKGROUND

The Plaintiff, Anne King, has brought a suit under 42 U.S.C. § 1983 and Georgia state laws against Officer Corey King, Investigator Trey Burgamy, and Washington County. Doc. 13. The Plaintiff alleges that the Defendants (1) violated her First Amendment right to free speech; (2) retaliated against her in violation of the First Amendment; (3) violated her Fourth Amendment right to be free from unreasonable seizures; and (4) maliciously prosecuted her, falsely arrested her, and committed civil conspiracy against her, in violation of Georgia law. *Id.* at ¶¶ 36-76. The Plaintiff alleges that Defendant King, who is the Plaintiff's former husband, conspired with Defendant

Burgamy to arrest the Plaintiff and her friend in retaliation for a Facebook post and that a magistrate charged her with "criminal defamation." *Id*. at ¶¶ 13-21. The Plaintiff argues that Washington County is liable because it "has done nothing to stop" similar unconstitutional criminal defamation arrests in the past and has failed to train its law enforcement officers and magistrates on First Amendment rights, and this failure to train and failure to supervise amounted to a custom or policy and constituted deliberate indifference to the Plaintiff's constitutional rights. *Id*. at ¶¶ 10, 45-48, 64-66.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Defendants have moved to dismiss in part. Doc. 16. The Defendants argue that Washington County lacks control over sheriff's deputies and magistrates and therefore cannot be held liable for their actions. Doc. 16-1 at 3-6. The Defendants also argue that Defendants King and Burgamy are entitled to Eleventh Amendment immunity as to the federal law claims against them in their official capacities and are entitled to sovereign immunity as to the state law claims against them in their official capacities. *Id*. at 6-8.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1261 (11th Cir. 2006) (quotation marks and

citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

**B.     Defendant Washington County**

Counties may be sued under § 1983 for their constitutional violations. *Knight v. Miami-Dade Cty.*, 856 F.3d 795, 819 (11th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978)). To establish that the county carried out a constitutional violation, "a plaintiff 'must identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county.'" *Id.* (quoting *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003)). Unless an official county policy exists, the plaintiff "must show that the county has authority and responsibility over the governmental function in issue and must also identify those officials who speak with final policymaking authority for that local governmental entity." *Id.* (citation omitted). On the other hand, "[counties] can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Turquitt v. Jefferson Cty.*, 137

F.3d 1285, 1292 (11th Cir. 1998).  Whether an official is acting as a policymaker for the State or for the county depends on the function the official is serving and "on the definition of the official's functions under relevant state law."  *McMillian v. Monroe Cty.*, 520 U.S. 781, 785-86 (1997) (citations omitted).

The Defendants assert that Washington County cannot be held liable because the Plaintiff's amended compliant fails to state a plausible allegation that Washington County has control over sheriff's deputies or magistrates.  Doc. 16-1 at 4-6.[1]  The Court agrees.

### 1. Control over Sheriff's Deputies

The Plaintiff alleges that Defendants King and Burgamy were employed by the Washington County Sheriff's Office at the time they allegedly denied the Plaintiff her constitutional rights by arresting her.  Doc. 13 at ¶¶ 4-5.  Therefore, one issue for the Court is whether the complaint plausibly alleges that Washington County controls sheriff's deputies in their law enforcement duties.

The Supreme Court has held that an Alabama sheriff represents the state, not the county, when acting in a law enforcement capacity.  *McMillian*, 520 U.S. at 785-86.  The Court considered the Alabama Constitution, Alabama state course cases, and the Alabama Code and held that "the weight of evidence is strongly on the side of the conclusion [that] Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties."  *Id.* at 787-93.

Neither the Supreme Court nor the Eleventh Circuit has adopted such a categorical rule regarding Georgia sheriffs.  The Eleventh Circuit has held that "the

---

[1] The Defendants also argue that the Plaintiff's complaint only identifies "an isolated inciden[t] and not . . . any custom or policy."  Doc. 16-1 at 3-4.  Because the Court finds that the complaint fails to state a plausible claim that Washington County controls its sheriff's deputies or magistrates and therefore fails to state a plausible claim to relief against Washington County, the Court need not determine whether the Plaintiff's complaint plausibly states a custom or policy of Washington County.

-4-

Clayton County Sheriff is not a county policymaker under § 1983 for his law enforcement conduct and policies regarding warrant information on the [statewide Criminal Justice Information System database] or the training and supervision of his employees in that regard." *Grech*, 335 F.3d at 1348. But *Grech* was a split decision, and the Eleventh Circuit did not find a majority willing to hold that a Georgia sheriff is *never* a county policymaker under § 1983 for his law enforcement conduct. *See id.* at 1347 n.46 ("Because no opinion obtained a majority of the Court, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (internal quotation marks and citations omitted)).[2] Because *Grech* does not offer binding precedent on the question of whether the Plaintiff's amended complaint plausibly alleges that Washington County controlled Defendants King and Burgamy under § 1983 in their law enforcement duties, the Court looks to Georgia law governing the function Defendants King and Burgamy were serving at the time of the alleged constitutional violations—law enforcement. *See McMillian*, 520 U.S. at 785-86.

The Georgia Constitution vests the power to "take care that the laws are faithfully executed" in the Governor, and it provides for the election of sheriffs. Ga. Const. art. 5, § 2, ¶ II; Ga. Const. art. 9, § 1, ¶ III. The Georgia Code authorizes sheriffs and other state and local authorities to arrest criminals. O.C.G.A. § 40-13-30. The Georgia Code also specifies qualifications and training of sheriffs, sets minimum salaries for sheriffs, allows sheriffs to directly appoint deputies, and provides a mechanism for the Governor to investigate sheriffs' improprieties. O.C.G.A. §§ 15-16-1; 15-16-3; 15-16-20; O.C.G.A.

---

[2] But in fact, after *Grech* was decided, the Georgia Court of Appeals adopted the plurality's reasoning. *See Brown v. Dorsey*, 276 Ga. App. 851, 855, 625 S.E.2d 16, 21 (2005) ("Although *Grech* is not binding precedent, we find its reasoning very persuasive . . . . We therefore conclude, as did the Eleventh Circuit in *Grech*, that the Constitution has made the sheriff independent from the County, notwithstanding the designation of the sheriff as a 'county officer.'").

§ 15-16-26; O.C.G.A. § 15-16-23. Further, under Georgia law, county boards of commissioners cannot discharge sheriff's deputies. *Bd. of Com'rs of Randolph Cty. v. Wilson*, 260 Ga. 482, 483, 396 S.E.2d 903, 905 (1990); *see also Duffey v. Bryant*, 950 F.Supp. 1168, 1174 (M.D. Ga. 1997) (citing *Bd. of Com'rs of Randolph Cty. v. Wilson*, 260 Ga. 482, 396 S.E.2d 903 (1990); *Pettus v. Smith*, 174 Ga. App. 587, 330 S.E.2d 735 (1985)) ("It is well-settled law in Georgia that a county and its commissioners are without authority over the sheriff or his deputies."). "The sheriff, and not the county, is liable for the misconduct of his deputies." *Brown v. Jackson*, 221 Ga. App. 200, 201, 470 S.E.2d 786, 787 (1996) (citations omitted).

In all of these provisions, Georgia law limits counties' power over sheriffs and their deputies. In contrast, the Georgia Code grants counties expansive authority over county police. *See, e.g.*, O.C.G.A. §§ 36-8-1 (authorizing county governing authorities "to elect or appoint such number of county police as in its discretion it deems proper, provided that the county governing authority complies with the provisions of this Code section"), 36-8-2 (vesting in the county governing authority to power to appoint or remove county police "with or without cause"), 36-8-5 (rooting the law enforcement power of county police "[u]nder the direction and control of the county governing authority"), 36-8-7 (giving the county governing authority the power to "make rules and regulations for the conduct, management, and control of . . . county police").

The Plaintiff alleges that "the Georgia Constitution defines them as 'county officers.'" Doc. 13 at ¶ 5. But this constitutional labeling is only one factor, and the other factors of Georgia law compel the Court to conclude that the Plaintiff's amended complaint has failed to allege a plausible claim that Defendants King and Burgamy, and the Washington County Sheriff's Office charged with training and supervising them,

were acting on behalf of Washington County, not the state, when they arrested the Plaintiff. *See Grech*, 335 F.3d at 1344 ("[The lack of county control over sheriffs in Georgia law] requires our conclusion that the 'county officer' nomenclature contained in Georgia's Constitution reflects a geographic label defining the territory in which a sheriff is elected and mainly operates[,] and it does not make a sheriff a county policymaker."). This decision matches the rulings of other district courts in the § 1983 context. *See, e.g.*, *McDaniel v. Yearwood*, 2012 WL 526078, at *8 (N.D. Ga.) ("In conducting arrests, Georgia sheriffs and their deputies act on behalf of the state, not the county.").

### 2. Control over Magistrates

The Plaintiff's amended complaint alleges that the Plaintiff's rights were violated by "[t]he County, Officer King, and Investigator Burgamy," and the amended complaint alleges that the County magistrate ordered the Plaintiff to appear for a warrant hearing and had her arrested for "criminal defamation." Doc. 13 at ¶¶ 18-19, 21, 37. To the extent the Plaintiff's amended complaint alleges that the County is liable because of the actions of the magistrate, the Court finds that the Plaintiff has also failed to state a claim to relief that is plausible on its face.

The Georgia Constitution roots magistrate courts in state law, and state law guides magistrate courts' jurisdiction. *See* Ga. Const. art. 6, § 1, ¶ I ("The judicial power of the state shall be vested exclusively in the following classes of courts: magistrate courts, probate courts, juvenile courts, state courts, superior courts, Court of Appeals, and Supreme Court. Magistrate courts, probate courts, juvenile courts, and state courts shall be courts of limited jurisdiction."); *see also* Ga. Const. art. 6, § 3, ¶ I ("The magistrate, juvenile, and state courts shall have uniform jurisdiction as provided by law."). The state of Georgia, not its counties, therefore generally controls magistrates in

their judicial functions, including warrant-making. *See also Watts v. Bibb Cty.*, 2010 WL 3937397, at *11 (M.D. Ga.) (granting a defendant county's motion for summary judgment because the county did not exercise sufficient control over the magistrate's employment-making decisions in a § 1983 suit). The Plaintiff's amended complaint presents no plausible allegation that Washington County controlled the magistrate such that failure to train or supervise the magistrate should render Washington County liable for the magistrate's constitutional violations.

C.  **Federal Law Claims and Eleventh Amendment Immunity**

The Defendants next argue that Defendants King and Burgamy are entitled to Eleventh Amendment immunity as to federal claims against them in their official capacities. Doc. 16-1 at 6-7. "Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued. To receive Eleventh Amendment immunity, a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an 'arm of the State,' which includes agents and instrumentalities of the State." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (internal citations omitted). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "A deputy's functions are derived from the sheriff's functions, so the deputy's performance of this function is also a state function." *Lee v. Skelton*, 840 F.3d 1334, 1342 (11th Cir. 2016). In the Eleventh Circuit, "four factors . . . determine whether an entity is an 'arm of the State' in carrying out a particular function: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments

against the entity." *Manders*, 338 F.3d at 1309 (citations omitted).[3]  This analysis overlaps with the issue of control for § 1983 suits, discussed above.

The Eleventh Circuit has held that a sheriff is an "arm of the State" in establishing jail force policy, training, and discipline. *Id.* at 1328.  District courts deciding the issue have determined that a sheriff and employees performing law enforcement functions act as an "arm of the state," not the county. *See Moon v. Rockdale Cty.*, 188 F.Supp.3d 1369, 1378-79 (N.D. Ga. 2016) (ruling that the Rockdale County Sheriff's Office was an arm of the state and concluding that, "in most law enforcement functions, Georgia sheriffs are arms of the state, not of the county"); *see also Lawrence v. West Publishing Corp.*, 2016 WL 4257741, at *11 (N.D. Ga.) (documenting cases from the Northern District of Georgia).

The Court finds that the Plaintiff's complaint fails to state a plausible allegation that Defendants King and Burgamy in their official capacities were not acting as arms of the State for purposes of Eleventh Amendment immunity.  As discussed in the section regarding 1983, Georgia law shows that the first two *Manders* factors—how state law defines the entity and the degree of control the state has over the entity—favor defining a sheriff as an arm of the State.  *See also Manders*, 338 F.3d at 1311 ("Georgia law likewise makes the county entity itself, here Clinch County, a separate entity independent of the sheriff's office . . . . [U]nder Georgia's Constitution, the State has exclusive authority and control over the duties and affairs of the sheriff's office.").  The third factor weighs both for and against a sheriff's deputy as an arm of the State: Georgia counties fund their sheriff's offices, but state law requires counties to "provide

---

[3] The Plaintiff argues that, in its focus on these four factors, "[t]he Eleventh Circuit's jurisprudence is thus at odds with that of the Third, Fourth, Fifth, Ninth, and Tenth Circuits," which each concludes that the core Eleventh Amendment concern is preventing states from having to pay federal court judgments.  Doc. 17 at 12 n.4.  But the Eleventh Circuit's approach is nonetheless binding on this Court.

sufficient funds to allow the sheriff to discharge his legal duties" and prevents counties from "dictat[ing] to the sheriff how that budget will be spent in the exercise of his duties." *Id*. at 1323 (quoting *Chaffin v. Calhoun*, 262 Ga. 202, 203, 415 S.E.2d 906, 908 (1992)). Finally, the Eleventh Circuit in *Manders* held that the fourth factor weighed for a finding that a party is an "arm of the State" when, as here, the county cannot be held liable for the tortious actions or misconduct of the sheriff or his deputies. *Id*. at 1326 (citations omitted). The Plaintiff may argue, with respect to *Grech* and *Manders*, that "both decisions are incorrect," but nothing in the Plaintiff's amended complaint alleges facts distinguishing the circumstances in this case from the binding Eleventh Circuit precedent those cases present. Doc. 17 at 11; *see also Purcell v. Toombs Cty.*, 400 F.3d 1313, 1325 (11th Cir. 2005) ("Although we declined [in *Manders*] to determine that a Georgia sheriff wears a 'state hat' for all functions, we decided that a sheriff's 'authority and duty' to administer the jail in his jurisdiction flows from the State, not [the] County.'" (*citing Manders*, 338 F.3d at 1315)). Accordingly, Defendants King and Burgamy are entitled to Eleventh Amendment immunity as to the Plaintiff's federal claims against them in their official capacities.

**D.    State Law Claims and Sovereign Immunity**

Finally, the Defendants argue that Defendants King and Burgamy are entitled to sovereign immunity as to state law claims against them in their official capacities. Doc. 16-1 at 7-8. Georgia's sovereign immunity "extends to the state and all of its departments and agencies," including counties and sheriffs (and sheriffs' deputies) sued in their official capacities, unless sovereign immunity has been waived. *Carter v. Butts Cty.*, 821 F.3d 1310, 1323 (11th Cir. 2016) (citing Ga. Const. art. 1, § 2, ¶ IX; *Gilbert v. Richardson*, 264 Ga. 744, 452 S.E.2d 476, 479 (1994)); *see also Banks v. Happoldt*,

271 Ga. App. 146, 147, 608 S.E.2d 741, 743 (2004) ("This sovereign immunity applies to counties and thus protects county employees who are sued in their *official* capacities." (internal citations omitted)).  Sovereign immunity can be waived "only . . . by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."  Ga. Const. art. 1, § 2, ¶ IX(e).

        The Plaintiff argues that whether sovereign immunity has been waived here is a jury issue because Washington County has represented that it has liability insurance, and O.C.G.A. § 36-33-1(a) provides that a "municipal corporation" waives sovereign immunity to the extent it purchases liability insurance.  Doc. 17 at 12-13.  But O.C.G.A. § 36-33-1(a) is limited to "municipal corporations of the state," and the Georgia Code defines "municipal corporation" as synonymous with "city," "town," "municipality," or "village;" "county" is not listed as such a term.  O.C.G.A. § 36-30-1; *see also Collier v. Conway*, 672 F. App'x 950, 952-53 (11th Cir. 2016) ("The Georgia Supreme Court has distinguished counties from municipalities, finding that counties are subdivisions of the State government, while municipalities are creatures of the legislature, whose existence may be established, altered, amended, or utterly abolished by the legislature." (internal quotation marks and citation omitted)).  The Georgia Court of Appeals has accordingly held that O.C.G.A. § 36-33-1(a) does not apply to unified county-municipal governments because the provision "by its terms applies to municipal corporations, not to counties." *Athens-Clarke Cty. v. Torres*, 246 Ga. App. 215, 216-17, 540 S.E.2d 225, 226 (2000).[4]

---

[4] As the Plaintiff points out, one Eleventh Circuit case suggests otherwise.  Doc. 17 at 13.  The Eleventh Circuit has cited O.C.G.A. § 36-33-1 for the proposition that "Georgia law allows a county to waive immunity through the purchase of liability insurance for which the defense of sovereign immunity would otherwise have been available."  *Carter v. Butts Cty.*, 821 F.3d 1310, 1323 (11th Cir. 2016).  But in *Carter*, the Eleventh Circuit affirmed the district court's finding on summary judgment that the Plaintiffs had failed to prove waiver of sovereign immunity, because the Plaintiffs offered no evidence of liability insurance.  *Id.* at 1323-24.  The Eleventh Circuit's conclusion that O.C.G.A. § 36-33-1 applies to counties did not affect its holding, because it still affirmed the lower court's summary judgment finding that sovereign immunity was not waived.  Accordingly, the Court agrees with the Defendants: if evidence of

Further, the Georgia legislature has waived counties' sovereign immunity in the context of some motor vehicle accidents, and it explicitly used the term "county" to do so. O.C.G.A. § 33-24-51(b) waives sovereign immunity of "local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle," and it lists "a municipal corporation, a county, or any other political subdivision of this state" as types of "local government entities." Therefore, in adopting O.C.G.A. § 33-24-51(b), the Georgia legislature clearly considered counties to be distinct from municipal corporations. It follows that, in order to waive counties' sovereign immunity, a Georgia Code provision must do so explicitly. By using the term "municipal corporations" and omitting the term "counties" in O.C.G.A. § 36-33-1(a), the Georgia legislature did not extend the sovereign immunity waiver of O.C.G.A. § 36-33-1(a) to counties.

The Plaintiff, as the party seeking to benefit from a waiver of sovereign immunity, bears the burden of demonstrating a waiver. *Carter*, 821 F.3d at 1324. The Plaintiff's amended complaint fails to meet this burden because the Plaintiff has not made a plausible claim that a waiver exists. Without a waiver, the Defendants enjoy sovereign immunity from the state law claims made against them in their official capacities.

### III. CONCLUSION

The Plaintiff alleges serious misconduct by Defendants King and Burgamy. But Washington County cannot, as a matter of law, be held liable for this misconduct. Neither can Defendants King and Burgamy be held liable in their official capacities for their alleged misconduct. Accordingly, the Defendants' partial motion to dismiss (Doc.

---

liability insurance had been on the record in *Carter*, "it is likely the [Eleventh Circuit] would have delved further into Georgia law to determine that [O.C.G.A. § 36-33-1] did not apply to the county." Doc. 18 at 6 n.3. The Eleventh Circuit did so in another case, holding that the term "municipal corporation" does not apply to counties or sheriffs in interpreting another Georgia statute providing for waiver of sovereign immunity, O.C.G.A. § 36-33-4. *Collier v. Conway*, 672 F. App'x 950, 952-53 (11th Cir. 2016).

16) is **GRANTED**. The Plaintiff's claims against Defendants King and Burgamy in their individual capacities remain.

**SO ORDERED** this 12th day of September, 2017.

S/ Marc T. Treadwell  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT