# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **ANNE KING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:17-CV-24 (MTT)** |
| | ) | |
| **COREY KING,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>ORDER</u>

Anne King believed that her ex-husband, Corey King, was not doing his fair share in the care of their children. Frustrated, she vented on Facebook. Doc. 13 ¶ 14. That post led to her arrest. Ms. King alleges that her ex-husband and his friend, Trey Burgamy, were responsible for her unconstitutional arrest and thus she filed this action alleging claims pursuant to 42 U.S.C. § 1983 and Georgia law. The Defendants have moved for summary judgment. Corey King's motion is **GRANTED in part** and **DENIED in part**. Trey Burgamy's motion is **DENIED**.

## I. BACKGROUND[1]

On January 15, 2015, Anne King posted on Facebook: "That moment when everyone in your house has the flu and you ask your kid's dad to get them (not me) more Motrin and Tylenol and he refuses." Doc. 13 ¶ 14. Her post referred to Captain Corey King, the father of Ms. King's children, her ex-husband, and an officer with the Washington County Sheriff's Department. *See* Docs. 29 at 11:2-7, 21:22-22:6; 33 at 8:20-9:17.

---

[1] Unless stated otherwise, the facts are undisputed.

Later that morning, Captain King, feeling upset and "disrespected" over the post, contacted Washington County's magistrate court about initiating a criminal complaint against Ms. King. Docs. 33 at 15:24-16:4; 38-7. Captain King then went to the courthouse office of Washington County Sheriff's Department Investigator Trey Burgamy, his "[p]retty good friend" or "close friend," to begin the process for having Ms. King arrested. Docs. 32 at 14:2-11; 33 at 56:8-10.

As a part of that process, Captain King prepared an "application of issuance of criminal warrant." Doc. 38-7. Anyone can complete such an application, and Ralph Todd, Washington County's Chief Magistrate, testified that it was his practice to hear each one that came across his desk, regardless of who filed it. Doc. 31 at 8:5-9, 11:1-17. Under "tell what happened, in your own words (not what the police report says) and why you want this person arrested" on the warrant application, Captain King wrote "see attached report." Doc. 38-7 at 2. The attached report was an incident report prepared by Investigator Burgamy at Captain King's request. Docs. 32 at 14:12-18; 33 at 35:13-17; 38-8. Investigator Burgamy recorded that "Complainant Corey King reported that his former wife, Anne King, is harassing him via Facebook postings." Doc. 38-8 at 2. Although Investigator Burgamy had not seen Ms. King's Facebook post and did not know if it was true or false, he wrote, under "incident type" on the incident report form, "16-11-39.1 – Harassing Phone Calls."[2] Docs. 32 at 15:7-12, 25:5-18; 38-8 at 1. He later testified that he chose that charge because it was the only "remotely close charge" he found that could apply. Doc. 33 at 15:2-16. The same day, in conjunction with Captain King's application and Investigator Burgamy's incident report, Magistrate Todd issued Ms. King a notice that a hearing had been scheduled for January 21 to determine whether sufficient probable cause existed for her arrest. Doc. 38-9.

[2] This refers to O.C.G.A. § 16-11-39.1.

At the hearing, Magistrate Todd swore in Ms. King, and she testified that she made the Facebook post and explained why.  Doc. 29 at 33:17-34:7.  Captain King, wearing a polo shirt with an emblem of the Washington County Sheriff's Department, also attended the hearing.  *Id.* at 38:2-6; 33 at 9-12.  Investigator Burgamy was also present, although he testified in his deposition that he was asked to sit in as a bailiff "for security purposes."  Doc. 32 at 18:21-24.  It was at the hearing that Investigator Burgamy first saw the Facebook post.  *Id.* at 25:5-13.  Neither then nor at any other time did Investigator Burgamy make any effort to determine whether the post was false.  *See id.* at 29:15-16 (Q: "Were any of [the Facebook posts shown at the hearing, including Ms. King's,] false?"  A: "I couldn't tell you.").

After hearing Ms. King and Captain King testify, Magistrate Todd—whose legal training is limited to forty hours of training when he first became a magistrate and twelve hours annually since—told Ms. King that he "felt like the defamation of character fit the crime better than harassing phone calls."  Docs. 29 at 34:8-35:3; 31 at 16:14-20.  According to Investigator Burgamy, Magistrate Todd told Investigator Burgamy that "if you will take the warrant for defamation of character, I'll sign it."  Doc. 32 at 15-17.

Of course, law enforcement officers do not actually "take a warrant."  Rather, Magistrate Todd was clearly referring to a typical process that leads to the issuance of an arrest warrant.  A law enforcement officer executes an affidavit swearing to facts that allow a judicial officer to determine whether a warrant will issue.  Thus, Magistrate Todd effectively told Investigator Burgamy that if Investigator Burgamy would execute an affidavit supporting the issuance of an arrest warrant, he—Magistrate Todd—would issue the warrant.

Burgamy then executed an affidavit, swearing to the following facts:

> Personally came <u>INV. TREY BURGAMY</u>, who on oath says that, to the best of his/her knowledge and belief, <u>ANNE MARIE KING</u> did in the County aforesaid, commit the offense of, TO WIT: <u>CRIMINAL DEFAMATION (Misdemeanor)</u> in said County, on the <u>15th</u> Day of <u>JANUARY</u> 2015. The place of occurrence of said offense being <u>WASHINGTON COUNTY, GEORGIA</u>
> And against <u>LAWS OF THE STATE OF GEORGIA (O.C.G.A. 16-11-40)</u>
>
> Said offense being described as <u>SUBJECT DID, WITHOUT A PRIVILEGE TO DO SO AND WITH INTENT TO DEFAME ANOTHER, COMMUNICATE FALSE MATTER WHICH TENDS TO EXPOSE ONE WHO IS ALIVE TO HATRED, CONTEMPT, OR RIDICULE, AND WHICH TENDS TO PROVOKE A BREACH OF PEACE. SPECIFICALLY, SUBJECT DID MAKE DEROGATORY AND DEGRADING COMMENTS DIRECTED AT AND ABOUT COREY KING, FOR THE PURPOSE OF PROVOKING A BREACH OF THE PEACE.</u>
>
> And thus deponent makes this affidavit that a warrant may issue for his arrest.

Doc. 38-10 at 1. Under "affiant" below the above affidavit is the signature "Inv. T. Burgamy." *Id*. On the second page of the arrest warrant, under "Prosecutor" is written "INV. TREY BURGAMY." *Id.* at 2.

Ms. King then waited at the courthouse until a deputy arrested her and took her in a patrol car to be booked at the Washington County Sheriff's Department. Doc. 29 at 38:17-39:1. She was then fingerprinted, put in a holding cell, and released about five and a half hours later when her aunt signed her bond. *Id.* at 40:23-42:21.

"Criminal defamation" is not a crime under the laws of Georgia, and it has not been since the Georgia Supreme Court struck it down as unconstitutional in 1982. *Williamson v. State*, 249 Ga. 851, 851, 295 S.E.2d 305, 306 (1982). In fact, the Georgia Law Enforcement Handbook and the Official Code of Georgia that Investigator Burgamy used for his reference specifically stated that the criminal defamation statute "has been

held unconstitutional in the case of Williamson versus State 1982."[3] Doc. 32 at 8:14-25, 23:1-13. Indeed, when Investigator Burgamy was asked whether he "should have known" that criminal defamation had been held unconstitutional, he answered, "Yes, sir." *Id.* at 39:11-17. And when asked whether he was aware of "a single fact that supported" Ms. King's arrest, he answered, "No, sir." *Id.* at 32:1-12.

Not surprisingly, the charges against Ms. King were ultimately dismissed. Doc. 29 at 42:22-25.

On January 19, 2017, Ms. King filed suit against Captain King and Investigator Burgamy in their individual capacities. Docs. 1; 13.[4] She alleges that the Defendants (1) violated her First Amendment right to free speech; (2) retaliated against her in violation of the First Amendment; (3) violated her Fourth Amendment right to be free from unreasonable seizures; and (4) maliciously prosecuted her, falsely arrested her, and committed "civil conspiracy," in violation of Georgia law. Doc. 13 ¶¶ 36-76. The Defendants have moved for summary judgment. Docs. 26; 27.

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (emphasis in original) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)). The moving party "simply may

---

[3] The Georgia Law Enforcement Handbook Magistrate Todd used at hearings was the same one that Investigator Burgamy used when filling out the incident report. Doc. 31 at 17:9-11, 18:2-21.
[4] Ms. King also originally brought claims against the Defendants in their official capacities and against Washington County, but those claims have been dismissed. Doc. 23.

show . . . that there is an absence of evidence to support the nonmoving party's case."

*Id.* at 1438 (internal quotation marks and citation omitted). "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224-25 (11th Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 324).

In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A material fact is any fact relevant or necessary to the outcome of the suit, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

### III. FEDERAL CLAIMS

Ms. King's amended complaint alleges that the Defendants violated her First Amendment and Fourth Amendment rights. Doc. 13. Below, the Court discusses whether Captain King acted under color of state law; whether Investigator Burgamy personally participated in any constitutional violations against Ms. King; whether Investigator Burgamy is entitled to quasi-judicial immunity; and whether Investigator Burgamy is entitled to qualified immunity.

### A.     Whether Captain King Acted under Color of State Law

"To obtain relief under 42 U.S.C. § 1983, [a plaintiff] must show (1) that the [defendant or defendants] deprived her of a right secured under the Constitution or federal law and (2) that the deprivation occurred under color of state law." *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993) (citations omitted). A person acts "under color of state law" when he acts with power "possessed by virtue of state

law and made possible only because [he] is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Usually, a state employee acting in the scope of his employment acts under color of state law. *Id.* at 50. However, "[n]ot all acts by state employees are acts under color of law." *Almand v. Dekalb Cty.*, 103 F.3d 1510, 1513 (11th Cir. 1997) (citations omitted). "The dispositive question is whether the defendant was exercising the power she possessed based on state authority or acting only as a private individual." *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012) (citation omitted).

Captain King argues that, as a matter of law, he was not acting under color of law because he acted as a private citizen and not a law enforcement officer when he filed a criminal complaint against Ms. King. Doc. 27-1 at 2-4. Ms. King argues that (1) Captain King's argument contradicts earlier arguments in which Captain King claimed to be acting as an arm of the state; (2) Captain King was a "state actor" pursuant to *West v. Atkins*, 487 U.S. 42 (1988) because he spoke with the people who effected the arrest, wore his uniform to the warrant hearing, and was the reason Ms. King was arrested; and (3) in the alternative, Captain King served as a "willful participant in joint activity with the State or its agents." Doc. 38 at 7-11.

The Court easily rejects the argument that Captain King's contention that he was not acting under color of law contradicts his earlier argument in support of his motion to dismiss Ms. King's claims against him in his official capacity. Doc. 38 at 7 (citing Docs. 18 at 3-6; 23 at 8-10). There, the Court considered whether, based on the allegations of the Complaint, Captain King and Investigator Burgamy were "arms of the state" pursuant to the Eleventh Amendment. Docs. 18 at 3-6; 23 at 8-10. Here, in contrast, the Court must consider whether Captain King was acting "under color of law." The analyses are different, and the disposition of one does not control the other.

Ms. King next contends that Captain King was a "state actor" pursuant to *West v. Atkins*, 487 U.S. 42 (1988). In *West*, the issue was whether a doctor who contracted with a state to provide part-time medical care to prison inmates used power based on state authority when he acted in his capacity as a medical treatment professional. *Id.* at 43-46. The Supreme Court held that he did. *Id.* at 50-51. In contrast, Captain King does not argue that his actions in his capacity as a law enforcement officer do not constitute the use of power based on state authority; they undoubtedly do. Instead, Captain King argues that he was not acting in his capacity as a law enforcement officer when he, using a process any private individual could use, applied for a warrant to have Ms. King arrested. Doc. 27-1 at 2-4. Accordingly, Captain King is not, as Ms. King argues, "like the prison doctor in *West*." Doc. 38 at 10.

Captain King is more like the law enforcement officers in *Almand v. DeKalb Cty.*, 103 F.3d 1510 (11th Cir. 1997), and *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261 (11th Cir. 2012), and the county magistrate judge in *Myers v. Bowman*, 713 F.3d 1319 (11th Cir. 2013). In *Almand*, the defendant showed the plaintiff his police badge, told her that he had information about her daughter's rape, and gained entry into her apartment by telling her he needed to talk with her "on urgent matters about her daughter." 103 F.3d at 1511-12. Inside, the defendant made sexual advances toward the plaintiff, the plaintiff asked him to leave, the defendant eventually left, and the plaintiff closed the door behind him. *Id.* at 1512. The defendant then forced the door open and raped the plaintiff. *Id.*

In *Butler*, the defendant, a corrections officer, walked in on the plaintiff engaging in sexual relations with the defendant's daughter, and the defendant—while wearing her uniform—drew the gun she used as a corrections officer on the plaintiff. 685 F.3d at 1263. The defendant handcuffed the naked plaintiff, forced him into an uncomfortable

position for a prolonged period, made numerous threats that she would kill him, asked her supervisors what charges she could bring against him, and—when she finally released the plaintiff—told him that she would write a false report against him if he reported the incident. *Id.* at 1263-64.

In *Myers*, the plaintiff and the defendant, a county magistrate judge and the plaintiff's ex-fiancé's father, agreed to rendezvous so that the plaintiff could exchange the couple's dog for an engagement ring and cash that the daughter had realized from the sale of some of the plaintiff's property. 713 F.3d at 1323. At the rendezvous, the cash was short, and the plaintiff refused to give up the dog. *Id.* As the plaintiff drove off, the defendant shouted that he would "have your goddamn ass locked up." *Id.* Using his county-issued radio, the defendant then reported to the police that someone stole his dog. *Id.* The defendant followed the plaintiff in his own vehicle, while his deputy clerk "remained in regular contact" with two law enforcement officers who pursued the plaintiff. *Id.* at 1323-24. Once the chase ended, the defendant got out of his vehicle and told the law enforcement officers to get the plaintiff out of the truck, whereupon the law enforcement officers forcibly subdued and arrested the plaintiff, inflicting injuries. *Id.* at 1324-25. The defendant then berated the plaintiff, asking "who the fuck [the plaintiff] was coming up here in [the defendant's] fucking county," and one of the law enforcement officers told the plaintiff, "He's the fucking magistrate judge up here. Who the fuck you think you messing with?" *Id.* at 1325.

In each case, the Eleventh Circuit held that, as a matter of law, the defendant acted in his or her private capacity and therefore was not acting "under color of state law." In *Almand*, the Eleventh Circuit held that the defendant's initial entry into the plaintiff's apartment "probably was conducted under color of state law" because he gained access to the plaintiff's residence as a result of his status as a police officer.

103 F.3d at 1514-15.  But when he left, then forcibly broke in moments later, "he was no different from any other ruffian," and raping the plaintiff was a private act because he did not do it pursuant to "power possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law." *Id.* at 1515 (quoting *West*, 487 U.S. at 59).

Similarly, the allegations in *Butler* "showed no more than [the defendant] acting as a private individual because nothing she allegedly did to [the plaintiff] relied on or invoked her authority as a law enforcement officer." 685 F.3d at 1265.  The Eleventh Circuit reasoned that, even though the defendant used her service weapon and handcuffs, people who are not corrections officers are also lawfully permitted to possess guns and handcuffs. *Id.*  "Just as 'any thug or burglar could have committed the same violent acts' as the officer in *Almand*, 103 F.3d at 1515, any irate mother with an anger management problem could have done what [the *Butler* defendant] did." *Id.* at 1267.

And in *Myers*, the record established that the defendant acted only as a private individual, notwithstanding his use of his official radio, instructions to the law enforcement officers to arrest the plaintiff, and threats to the plaintiff that seemingly invoked his position as county magistrate judge because the radio was non-proprietary, and the directions and threat at the scene of the arrest occurred after the officers had already initiated the arrest. 713 F.3d at 1330-31.  Further, the law enforcement officers were the ones who actually effected the plaintiff's arrest, not the defendant. *Id.* at 1331.

Here, Captain King, when he prepared an "application of issuance of criminal warrant," initiated a process that was available to all private individuals. Doc. 38-7. Magistrate Todd testified that anyone can complete an "application of issuance of criminal warrant"; his practice was to hear each one that came across his desk, regardless of who filed it; and law enforcement officers who complete the process are

not treated differently than average citizens.  Doc. 31 at 11:1-22.  No fact tends to prove that Captain King was at any time acting as a law enforcement officer.

Ms. King points to facts suggesting that Captain King's status as a law enforcement officer facilitated Ms. King's arrest—namely, his closeness with Investigator Burgamy, wearing his badge and Sheriff's Department clothing to the hearing, and his reputation in the town as a Sheriff's Department captain.  Doc. 27-1 at 8.  None of those is sufficient to create an issue of material fact.  As *Almand*, *Butler*, and *Myers* show, the relevant inquiry is whether Captain King "was exercising the power []he possessed based on state authority," rather than "acting only as a private individual," not whether he was afforded special treatment because of his status as a law enforcement officer.  *Butler*, 685 F.3d at 1265 (citation omitted); *see also Archer v. Logan*, 599 F. App'x 378, 378 (11th Cir. 2015) ("We agree with the district court that [the plaintiff] has cited no authority indicating that a state official acting purely in his private capacity acts under color of state law simply because he may have gained an indirect advantage by virtue of his official post." (quotation and citation omitted)).  Just as the rapist in *Almand* was "no different from any other ruffian" and the defendant in *Butler* was the same as "any irate mother," Captain King filed his complaint as an angry ex-husband.  103 F.3d at 1515; 685 F.3d at 1267.  While Captain King may have found it easier to file a complaint due to his familiarity with the process and his connections with Investigator Burgamy and Magistrate Todd, he nevertheless acted "in connection with a private dispute and not a matter that was before [him] in his official capacity."  713 F.3d at 1330; *see also Archer*, 599 F. App'x at 378 ("We also point out that the district court correctly rejected plaintiff Archer's argument that defendant Captain Logan was acting 'under color of state law' simply because his position in the Police Department *may* have gained him some preferential treatment by the District Attorney's Office

investigator or allowed him a measure of influence in the initiation of a criminal prosecution" (emphasis in original)).

Finally, Ms. King's response brief argues, in passing, that if Captain King were acting as a private individual, he served as a "willful participant in joint activity with the State or its agents" and therefore is liable under § 1983.  Doc. 38 at 11 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (citation omitted)).  In *Adickes*, the Supreme Court held that a private individual acts "under color of state law" pursuant to § 1983 if the private individual "reached an understanding" with state actors to deny the plaintiff's constitutional rights.  398 U.S. at 152.  To properly plead a § 1983 conspiracy between a private and state actor, a plaintiff must (1) show that at least one defendant is a state actor, and (2) "plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons."  *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (citation omitted).  Merely stringing together discrete steps of the warrant and arrest process is not enough; the plaintiff must show that the private and state actors reached an understanding to violate her constitutional rights.  *See id.*; *see also Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (holding that a plaintiff must show an "understanding and willful participation" to violate her constitutional rights).

Here, Ms. King has barely argued, much less advanced evidence, of such "understanding and willful participation" between a state actor and a private individual.  Moreover, Ms. King's amended complaint does not allege a § 1983 conspiracy claim.[5] *See generally* Doc. 13.  As the Defendants point out in their reply brief, a "plaintiff may

---

[5] Ms. King's amended complaint mentions conspiracy only once in her § 1983 allegations: "By seeking an arrest warrant under a long-unconstitutional statute, pressing charges, and *conspiring* with Investigator Burgamy to prosecute Ms. King for a bogus charge, Officer King intentionally violated Ms. King's rights." Doc. 13 ¶ 43 (emphasis added).  The plaintiff in *Adickes*, on the other hand, had a separate count alleging a § 1983 conspiracy between a private and state actor in her complaint.  398 U.S. at 148. Notably, Ms. King does allege a state law conspiracy claim.  Doc. 13 ¶¶ 74-76.

not amend her complaint through argument in a brief opposing summary judgment." Doc. 41 at 5 (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (citation omitted)). Even in Ms. King's brief, her factual argument is skeletal: in full, she states that "Captain King's deployment of Burgamy, who King asked to sign the Incident Report accompanying King's application for an arrest warrant . . . would render 'private citizen' Captain King a defendant who acted 'under color of law.'" Doc. 38 at 11. In short, Ms. King has not alleged a § 1983 conspiracy claim and has set forth no evidence that Captain King, acting as a private individual, reached an understanding and willfully participated with state actors to charge Ms. King for her Facebook posts.

Because Captain King did not act under color of law, he is not liable under § 1983 as alleged in Ms. King's amended complaint. Summary judgment is thus **GRANTED** to Captain King as to those claims.

## B. Whether Investigator Burgamy Personally Participated in Any Constitutional Violation

A plaintiff must prove an "affirmative causal connection" between an officer's acts or omissions and a constitutional violation to establish liability under § 1983. *Brown v. City of Huntsville*, 608 F.3d 724, 736-37 (11th Cir. 2010) (citation omitted). Investigator Burgamy argues that he merely "filled out an incident report, acted as a bailiff during the probable cause hearing, and filled out an arrest warrant form to reflect Magistrate Todd's order," none of which "amounted to personal participation" in the constitutional violation because Magistrate Todd was the one who ordered that Ms. King be charged with criminal defamation. Doc. 26-1 at 8. The Court disagrees.

When the evidence is considered in the light most favorable to Ms. King, Investigator Burgamy did personally participate in her unconstitutional arrest. Indeed, he participated in a critical way. Specifically, Investigator Burgamy signed an affidavit

swearing that probable cause existed to arrest Ms. King for criminal defamation. Doc.

38-10. Investigator Burgamy argues that Magistrate Todd *ordered* him to sign the

affidavit and that Investigator Burgamy was simply carrying out that order. *See, e.g.*,

Doc. 26-1 at 8; Doc. 43 at 2. Investigator Burgamy cites deposition testimony from

Magistrate Todd, Ms. King, and the Defendants describing Magistrate Todd as

"instructing," "directing," or "ordering" Investigator Burgamy to draw up a warrant for

criminal defamation and concludes, "Because all parties agree that the instruction by

Magistrate Todd was in fact an order for Burgamy to draw up the arrest warrant and to

arrest [Ms. King], there is no issue of fact in this regard." Doc. 43 at 2. But it is not at all

undisputed that Magistrate Todd "ordered" Investigator Burgamy to simply "take a

warrant." First, according to Investigator Burgamy, Magistrate Todd said, "Mr. Burgamy,

if you will take the warrant for defamation of character, I'll sign it." Doc. 32 at 22:11-20.[6]

On its face, that is not an order. Second, Investigator Burgamy did not simply "take a

warrant." He swore to the truth of the following facts:

> Personally came <u>INV. TREY BURGAMY</u>, who on oath says
> that, to the best of his/her knowledge and belief, <u>ANNE
> MARIE KING</u> did in the County aforesaid, commit the
> offense of, TO WIT: <u>CRIMINAL DEFAMATION
> (Misdemeanor)</u> in said County, on the <u>15th</u> Day of
> <u>JANUARY</u> 2015. The place of occurrence of said offense
> being <u>WASHINGTON COUNTY, GEORGIA</u>
> And against <u>LAWS OF THE STATE OF GEORGIA
> (O.C.G.A. 16-11-40)</u>
>
> Said offense being described as <u>SUBJECT DID, WITHOUT
> A PRIVILEGE TO DO SO AND WITH INTENT TO DEFAME
> ANOTHER, COMMUNICATE FALSE MATTER WHICH
> TENDS TO EXPOSE ONE WHO IS ALIVE TO HATRED,</u>

---

[6] Magistrate Todd testified in his deposition that if he directed a law enforcement officer to take out an arrest warrant and the officer knew that the law on which the arrest was based was unconstitutional, he would expect the law enforcement officer to tell him so that he would not order the arrest. Doc. 31 at 23:5-24:1. While Magistrate Todd's expectation of law enforcement officers is not dispositive of Investigator Burgamy's responsibility, it supports the conclusion that, when the evidence is viewed in the light most favorable to Ms. King, Investigator Burgamy was serving as an affiant rather than simply following Magistrate Todd's orders.

> CONTEMPT, OR RIDICULE, AND WHICH TENDS TO
> PROVOKE A BREACH OF PEACE. SPECIFICALLY,
> SUBJECT DID MAKE DEROGATORY AND DEGRADING
> COMMENTS DIRECTED AT AND ABOUT COREY KING,
> FOR THE PURPOSE OF PROVOKING A BREACH OF THE
> PEACE.

Doc. 38-10 at 1. Investigator Burgamy swore to these facts, including the "fact" that Ms. King's Facebook post was false, even though he knew of no facts supporting her arrest generally and had no idea whether her Facebook post was false. Doc. 32 at 29:15-16, 32:10-12.

Investigator Burgamy then made clear why he was swearing to those facts: "And thus deponent makes this affidavit that a warrant may issue for [Ms. King's] arrest." Doc. 38-10 at 1. While Investigator Burgamy may argue to a jury that he was acting under orders, the fact that he affirmed "on oath" as the "prosecutor" that Ms. King's "false" Facebook post constituted criminal defamation supports the inference that he was acting as an independent affiant and not just as an arm of Magistrate Todd.

In sum, when the evidence is construed in the light most favorable to Ms. King, Investigator Burgamy did not merely "fill[] out an arrest warrant form to reflect Magistrate Todd's order," and summary judgment on this ground is **DENIED**.[7]

## C. Whether Investigator Burgamy Is Entitled to Quasi-Judicial Immunity

"[L]aw enforcement personnel, acting in furtherance of their official duties and relying on a facially valid court order, are entitled to absolute quasi-judicial immunity from suit in a [§] 1983 action." *Roland v. Phillips*, 19 F.3d 552, 556 (11th Cir. 1994) (citation omitted).

---

[7] The Court is not convinced that, even if it were undisputed that Magistrate Todd ordered Investigator Burgamy to sign an affidavit Investigator Burgamy knew to be false, Investigator Burgamy would escape § 1983 liability. But it is not undisputed that Magistrate Todd did so, and therefore this case does not present that question.

Investigator Burgamy argues that, "because "Magistrate Todd is entitled to judicial immunity, Investigator Burgamy is entitled to quasi-judicial immunity for following Magistrate Todd's order." Doc. 26-1 at 6. Investigator Burgamy cites *Roland* for the proposition that when a law enforcement officer follows a facially valid judicial order, he is entitled to quasi-judicial immunity. *See id.* at 6-7 (citing *Roland*, 19 F.3d at 556-57). But, again, the record, drawing all inferences in favor of Ms. King, shows that Investigator Burgamy was not merely following a facially valid order. Rather, he signed an affidavit swearing that probable cause existed to arrest Ms. King for criminal defamation. Doc. 38-10. Accordingly, Investigator Burgamy is not protected by quasi-judicial immunity, and summary judgment on this ground is **DENIED**.

## D.    Whether Investigator Burgamy Is Entitled to Qualified Immunity

Civil lawsuits are generally only available against government officials performing discretionary functions if the officials "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A law enforcement officer acting in his discretionary authority is therefore entitled to qualified immunity unless a plaintiff can establish that (1) the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation; and (2) the unconstitutionality or illegality of the officer's actions was clearly established at the time of the incident. *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009) (citations omitted). The plaintiff bears the burden of proving that the officer is not entitled to qualified immunity, but on summary judgment, all reasonable inferences are drawn in favor of the plaintiff. *Dukes v. Deaton*, 852 F.3d 1035, 1041-42 (11th Cir. 2017).

Investigator Burgamy argues that he is entitled to qualified immunity because (1) Ms. King cannot prove that Investigator Burgamy violated her constitutional rights, and

(2) Ms. King's rights were not clearly established.  Doc. 26-1 at 8-14.  The Court agrees that clearly "Investigator Burgamy's actions in filling out an incident report and drafting a warrant pursuant to a magistrate's instructions fall within his discretionary functions." Doc. 26-1 at 9.  Accordingly, the Court must consider whether Ms. King can establish that a constitutional violation occurred and that the unconstitutionality was clearly established at the time.

### 1. Whether Investigator Burgamy Violated Ms. King's Constitutional Rights

The evidence, construed in the light most favorable to Ms. King, establishes that Investigator Burgamy violated Ms. King's rights under the First and Fourth Amendments.  As to Ms. King's First Amendment claims, Investigator Burgamy only argues that he cannot be held liable because "Magistrate Todd made the sole determination that [Ms. King] should be charged with criminal defamation," and therefore, Ms. King cannot show that Investigator Burgamy's conduct "adversely affected" her protected speech.  Doc. 26-1 at 10 (quoting *Pittman v. Tucker*, 213 F. App'x 867, 870 (11th Cir. 2007) (citation omitted)).  But, as discussed above, the Court cannot conclude as a matter of law that Magistrate Todd made the sole determination; there is evidence that the arrest warrant issued on Investigator Burgamy's affidavit swearing that probable cause existed to arrest Ms. King.  Doc. 38-10.

As to Ms. King's claims under the Fourth Amendment, Investigator Burgamy essentially makes the same argument factually, but with a different legal spin.  Malicious prosecution is a violation of the Fourth Amendment and is thus a constitutional tort under § 1983.  *See Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). To prove a § 1983 malicious prosecution claim under federal law, a plaintiff must establish that "(1) a criminal  prosecution [was] *instituted* or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff

accused's favor; and (4) caused damage to the plaintiff accused." *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008) (emphasis added). Investigator Burgamy argues that Magistrate Todd's conclusion that criminal defamation was a more appropriate charge than harassing phone calls precludes Ms. King's Fourth Amendment claim because the Eleventh Circuit has held that "intervening acts of [a] prosecutor, grand jury, judge and jury—assuming that these court officials acted without malice that caused them to abuse their powers—each break the chain of causation unless plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant policemen." *Barts v. Joyner*, 865 F.2d 1187, 1195 (11th Cir. 1989) (citations omitted); Doc. 26-1 at 11-12.

Even assuming that the decision to charge Ms. King with criminal defamation broke the causation chain that began when Investigator Burgamy made the dubious decision to charge Ms. King with making harassing phone calls, Investigator Burgamy once again ignores his critical role in the patently absurd, and unconstitutional, decision to arrest Ms. King for criminal defamation. *See, e.g.*, *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008) (reversing a district court's granting of summary judgment to a defendant police officer on the plaintiff's malicious prosecution claims when evidence raised a genuine issue of material fact as to whether the defendant fabricated evidence against the plaintiff and that evidence then served as the basis of the prosecution against him); *cf. Eubanks v. Gerwen*, 40 F.3d 1157, 1160-61 (11th Cir. 1994) (affirming the district court's granting of summary judgment to defendant police officers on the plaintiff's malicious prosecution claims pursuant to qualified immunity when the record, in the light most favorable to the plaintiff, showed that the defendants turned over all information to the State Attorney and did not "make the decision as to whether or not to prosecute" or "act in such a way as improperly to

influence the decision by the State Attorney in that regard"). It is a constitutional violation to sign an affidavit for a warrant that a reasonably well-trained officer would have known failed to establish probable cause and that he should not apply for the warrant. *See, e.g., Malley v. Briggs*, 475 U.S. 335, 345 (1986). Accordingly, when the evidence is construed in the light most favorable to her, Ms. King has shown that Investigator Burgamy violated her constitutional rights by signing the affidavit for her arrest warrant.

### 2. Whether the Unconstitutionality of Investigator Burgamy's Actions Was Clearly Established at the Time of the Incident

When the evidence is construed in the light most favorable to Ms. King, the unconstitutionality of Investigator Burgamy's actions was clearly established at the time of the incident. Naturally, Investigator Burgamy does not argue that it was not clearly established that an officer could not sign an affidavit seeking an arrest for criminal defamation, nor does he argue that it was not clearly established that he could not swear something was false when he did not know it to be false. Rather, building on his "following orders" argument, he asserts that the issue is whether it was clearly established that it was unconstitutional or illegal for a law enforcement officer to "second guess a [M]agistrate [J]udge's decision" or "refuse to follow the court's order." Docs. 26-1 at 13; 43 at 6. As discussed repeatedly, that is not the issue; there is evidence that Investigator Burgamy was not merely following an order. *See* Docs. 31 at 23:5-24:1; 32 at 22:11-20; 38-10 at 1. Construing the evidence in the light most favorable to Ms. King, the issues instead are whether it was clearly established that it was unconstitutional for an officer to sign an affidavit swearing that probable cause existed to arrest a person for violation of a statute that the Georgia Supreme Court had held unconstitutional, and for that officer to sign that affidavit when he did not know of "a

single fact that supported" the affidavit, and did not even know if the statement he swore was false was, in fact, false.  Doc. 32 at 32:10-12.  That question is easily answered.

A constitutional violation is clearly established if "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Dukes*, 852 F.3d at 1043 (citation and internal punctuation marks omitted).  Plaintiffs must show that the violation was clearly established "by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the relevant State Supreme Court."  *Gaines v. Wardynski*, 871 F.3d 1203, 1208-09 (11th Cir. 2017) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012)) (alterations and other citations omitted).

In 1982, the Georgia Supreme Court held unconstitutional Georgia's criminal defamation statute.  *Williamson v. State*, 249 Ga. at 851, 295 S.E.2d at 306.  The United States Supreme Court has held that it is a constitutional violation to sign an affidavit for a warrant that a reasonably well-trained officer would have known (1) failed to establish probable cause and (2) that he should not apply for the warrant.  *See, e.g.*, *Malley*, 475 U.S. at 345.  The Eleventh Circuit has held that a district court properly denied the defendant law enforcement officer's motion for summary judgment based on qualified immunity because it was clearly established that swearing to information that was not "believed or appropriately accepted by the affiant as true" clearly violates the constitution.  *Kelly v. Curtis*, 21 F.3d 1544, 1554-55 (11th Cir. 1994) (quoting *Franks v. Delaware*, 438 U.S. 154, 165-66 (1978)); *see also Cozzi v. City of Birmingham*, 892 F.3d 1288, 1293-98 (11th Cir. 2018) (holding that a district court properly found that a defendant law enforcement officer was not entitled to qualified immunity as to the plaintiff's false arrest claim when, based on the totality of the circumstances, the defendant did not have arguable probable cause to arrest the plaintiff).

Accordingly, when the evidence is construed in the light most favorable to her, Ms. King has shown that the constitutional rights Investigator Burgamy allegedly violated—signing an affidavit swearing to information that was not "believed or appropriately accepted by the affiant as true" and effecting an arrest without even "arguable probable cause" on a law that had been held unconstitutional by the Georgia Supreme Court over thirty years prior—were clearly established at the time of the incident. *Kelly*, 21 F.3d at 1554-55 (quoting *Franks*, 438 U.S. at 165-66); *Cozzi*, 892 F.3d at 1293-94 (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2018)).

Summary judgment is thus **DENIED** to Investigator Burgamy as to Ms. King's § 1983 claims.

## IV. GEORGIA STATE LAW CLAIMS

Ms. King's amended complaint also states claims against the Defendants for malicious prosecution, false arrest, and civil conspiracy under Georgia law. Doc. 13.

### A. Whether Ms. King's Malicious Prosecution and False Arrest Claims Are Mutually Exclusive

"A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action." O.C.G.A. § 51-7-40. "An arrest under process of law, without probable cause, when made maliciously, shall give a right of action to the party arrested." O.C.G.A. § 51-7-1. The Defendants argue that Ms. King's "false arrest" claims are actually "malicious arrest" claims and, since the elements of "malicious arrest" overlap almost completely with "malicious prosecution," the presence of one precludes the other. Docs. 26-1 at 15; 27-1 at 10-11. Indeed, the Georgia Code describes the elements of the two torts identically, except malicious prosecution, O.C.G.A. § 51-7-40, requires "prosecution" while malicious arrest, O.C.G.A. § 51-7-1, does not. Accordingly, in

*Ferrell v. Mikula*, the Georgia Court of Appeals noted that Georgia case law distinguishing "false imprisonment," "false arrest," "malicious arrest," and "malicious prosecution" "is quite confusing," in part as a legacy of "inexact nomenclature." 295 Ga. App. 326, 330, 672 S.E.2d 7, 12 (2008). As two Georgia district courts have observed, Georgia courts have treated false/malicious arrest claims such as Ms. King's as mutually exclusive from claims like her malicious prosecution claims because their only difference is that malicious prosecution contains the additional statutory element of showing that a prosecution was carried on. *See Clifton v. Jeff Davis Cty.*, 2017 WL 1347796 (S.D. Ga. 2017) (citing *Stephens v. Zimmerman*, 333 Ga. App. 891, 892, 774 S.E.2d 811, 815 (2015) (citations omitted); *McCord v. Jones*, 168 Ga. App. 891, 892, 311 S.E.2d 209, 210 (1983) (citations omitted)); *Stefani v. City of Grovetown*, 2016 WL 4611575, at *8 (S.D. Ga. 2016) (citing *Stephens*, 333 Ga. App. at 892, 774 S.E.2d at 815 (citations omitted); *Ferrell v. Mikula*, 295 Ga. App. at 329-33, 672 S.E.2d at 11-13 (citations omitted)).

Here, Ms. King was arrested pursuant to a warrant, and she was "prosecuted" in that she was forced to go to "an inquiry before a committing court or a magistrate" before the charges against her were dropped. O.C.G.A. § 51-7-42. Accordingly, under Georgia law, her claims for malicious prosecution constitute "the exclusive remedy." *Stefani*, 2016 WL 4611575, at *8 (quoting *McCord*, 168 Ga. App. at 892, 311 S.E.2d at 210). Therefore, her false/malicious arrest claims are **DISMISSED**.

## B. Whether Defendants Violated Ms. King's Rights under Georgia Law

When a defendant institutes a prosecution in the absence of probable cause, that is, if "the facts as they appeared at the time of instituting the prosecution were [not] such as to lead a person of ordinary caution to entertain a belief that the accused was guilty of the offense charged," he commits malicious prosecution. *See Wal-Mart Stores, Inc.*

*v. Blackford*, 264 Ga. 612, 613, 449 S.E.2d 293, 294 (1994).  Ignorance of the law, or the fact that the defendants thought that the plaintiff's acts constituted a crime, does not exempt a defendant from a malicious prosecution claim.  *Vasser v. Berry*, 85 Ga. App. 435, 437, 69 S.E.2d 701, 703 (1952).  When a defendant "directly or indirectly urges a law enforcement official to begin criminal proceedings," even if the initiation of the criminal action is not expressly directed by the defendant, the defendant may be held liable for malicious prosecution.  *Willis v. Brassell*, 220 Ga. App. 348, 350-51, 469 S.E.2d 733, 737 (1996) (citing *Ginn v. Citizens & S. Nat'l Bank*, 145 Ga. App. 175, 178, 243 S.E.2d 528, 530-31 (1978)).

Legal advice and actions of magistrates and police officers who are not licensed attorneys do not necessarily insulate a defendant from liability for his malicious prosecution.  *Brown v. Kisner*, 192 Miss. 746, 746, 6 So.2d 611, 616 (1942). Furthermore, when an investigating officer believes that factual allegations constitute one crime and a magistrate determines that those same factual allegations constitute another crime, it does not break the causal connection between the defendant's actions and the plaintiff's injury.  *Willis*, 220 Ga. App. at 352, 469 S.E.2d at 738 ("It is the nature of the prosecution, not the express legal charge, which is the crucial ingredient.").

Captain King set out to have Ms. King arrested for a Facebook post he did not like.  Docs. 33 at 15:24-16:4; 38-7.  A jury could reasonably find Captain King, given his law enforcement background, knew that Ms. King's post did not provide probable cause for her arrest.  A jury could reasonably find Captain King enlisted Investigator Burgamy (who was not a licensed attorney) to assist him in his quest.  A jury could also reasonably find Investigator Burgamy, after researching the law, knew that posting on Facebook the way Ms. King did was not a crime and most certainly did not constitute criminal defamation.  Further, a jury could reasonably find that Investigator Burgamy

swore to the truth of facts he did not know to be true.  Given this, a jury could reasonably find that the Defendants jointly prosecuted Ms. King without probable cause.[8]

The Defendants argue, as Investigator Burgamy did in response to Ms. King's § 1983 claim, that Ms. King's state law claims must fail because their acts did not cause Magistrate Todd to sign the warrant for criminal defamation.  Doc. 26-1 at 11-13.  But, of course, causation issues must be analyzed under state law principles of proximate cause and the well-established principle that such issues are typically for a jury to decide.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Redmon v. Daniel*, 335 Ga. App. 159, 166, 779 S.E.2d 778, 784 (2015) (citation omitted).  Thus, Magistrate Todd's decision to sign a warrant authorizing the arrest of Ms. King for criminal defamation, rather than harassing phone calls, does not absolve the Defendants of the consequences of what they set in motion. Accordingly, the Defendants are not entitled to summary judgment on Ms. King's state law claims for malicious prosecution.

## C.    Whether Defendants are Entitled to Official Immunity

"The doctrine of official immunity, developed primarily in Georgia through case law, provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are willful, wanton, or outside the scope of his authority."  *Gilbert v. Richardson*, 264 Ga. 744, 752 (1994) (citations omitted).  Pursuant to the Georgia Constitution, state officers and employees acting in the performance of their official

---

[8] The Complaint also asserts a state law conspiracy claim.  Doc. 13 ¶¶ 74-76.  Conspiracy, on its own, is not the basis of a malicious prosecution claim, but conspiracy may be alleged and later proved so that each co-conspirator may be liable for the acts of all. *Progressive Life Ins. Co. v. Doster*, 98 Ga. App. 641, 649, 106 S.E.2d 307, 313 (1958).  However, a plaintiff need not prove a conspiracy among the defendants for the plaintiff to recover from them as joint tortfeasors.  *See Mitchell v. Gilson*, 233 Ga. 453, 454, 211 S.E.2d 744, 745 (1975).  Given that the Defendants are allegedly joint tortfeasors, it is not clear what Ms. King's state law conspiracy claim adds.

duties are only "liable for injuries and damages if they act with actual malice or with actual intent to cause injury." GA. CONST. art. I, § II, Par. IX(d).

As discussed above, Captain King was not acting in the performance of his official duties when he initiated a criminal complaint against Ms. King and is thus not entitled to official immunity. Investigator Burgamy, on the other hand, undoubtedly was. For the reasons discussed throughout this Order, however, a reasonable juror could conclude that Investigator Burgamy acted "with actual malice or with actual intent to cause injury." GA. CONST. art. I, § II, Par. IX(d). Thus, the Court cannot conclude as a matter of law that the Defendants are entitled to official immunity.

## V. PUNITIVE DAMAGES AND ATTORNEY'S FEES

For the reasons discussed above, the Court holds that a reasonable jury could find Investigator Burgamy was "motivated by an evil motive or intent" or acted with "reckless or callous indifference to federally protected rights," and thus summary judgment is not appropriate on Ms. King's claims for punitive damages based on her § 1983 claims. *Anderson v. City of Atlanta*, 778 F.2d 678, 688 (11th Cir. 1985) (citing *Smith v. Wade*, 461 U.S. 30 (1983)). Similarly, the Court cannot say as a matter of law that Ms. King cannot establish by "clear and convincing evidence that the defendant[s'] actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b).

Nor is summary judgment appropriate on Ms. King's claims for attorney's fees. It is not yet clear who the "prevailing party" will be under the § 1983 claims against Investigator Burgamy. *See* 42 U.S.C. § 1988(b). Further, because a jury may reasonably find that the Defendants acted in bad faith, were stubbornly litigious, or

caused unnecessary trouble and expense based on the disputed facts, summary judgment is not appropriate. O.C.G.A. § 13-6-11.

## VI. CONCLUSION

Captain King's motion for summary judgment (Doc. 27) is **GRANTED in part**—the § 1983 claims against Captain King are **DISMISSED with prejudice**. Otherwise, the Defendants' motions are **DENIED**. Therefore, Ms. King's false/malicious arrest claims are subsumed by her malicious prosecution claims.

**SO ORDERED** this 20th day of September, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT